## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | NO. 2:09-cr-43 |
| | ) |     2:13-cv-454 |
| JOVAN DEMONT STEWART, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |

## OPINION AND ORDER

This matter is before the Court on the: (1) Motion Under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person
in Federal Custody, filed by Petitioner, Jovan Demont Stewart, on
December 9, 2013 (DE #499); and (2) Motion for Leave to Proceed In
Forma Pauperis, filed by Petitioner, Jovan Demont Stewart, on
December 9, 2013 (DE #504).  For the reasons set forth below, the
motion for leave to proceed in forma pauperis (DE #504) is **DENIED**
and the section 2255 motion (DE #499) is also **DENIED.**  Stewart's
request for an evidentiary hearing (DE #543-1, p. 40), is also
**DENIED.**  The Clerk is **ORDERED** to **DISMISS** this civil action **WITH
PREJUDICE.**  Additionally, the Court **DECLINES** to issue a certificate
of appealability.  The Clerk is **FURTHER ORDERED** to distribute a
copy of this order to Petitioner (Inmate Reg. No. 10105-27), Tucson
USP, US Penitentiary, Inmate Mail/Parcels P.O. Box 24550, Tucson,

Arizona 85734, or to such other more current address that may be on file for the Petitioner.

BACKGROUND

On July 2, 2009, Stewart was charged with four co-defendants in a superseding indictment (DE #35). Stewart was charged with: Count 1 - conspiracy under 18 U.S.C. § 371 to commit various violations of 18 U.S.C. §§ 2, 1591(a)(1), (b)(2), 2421, and 2423(a); in Counts 6, 8, 10, 12, 14 and 18 - substantive violations of 18 U.S.C. § 1591(a)(1) and (b)(1) for his role in recruiting, enticing, harboring, transporting, providing, and obtaining victims A.H., A.W., B.G., C.V., J.O., and S.K., knowing that force, fraud, or coercion would be used to cause them to engage in commercial sex acts; in Counts 7, 9, 11, 13, 19, 20, and 21, with substantive violations of 18 U.S.C. §§ 2, 2421, for his role in transporting victims A.H., A.W., B.G., C.V., S.K., A.B.3, and L.E. in interstate commerce with intent that they engage in prostitution; and Count 3 for violation of 18 U.S.C. §§ 2, 2423(a), for his role in transporting minor victim A.B.2 in interstate commerce with intent that she engage in prostitution. (DE #35.)

Following a ten-day jury trial, Stewart was found guilty of all charges against him. (DE #203.) At trial, Stewart was represented by attorney Mark Psimos. On December 7, 2010, this Court held a sentencing hearing for Stewart, and he was sentenced

to: 60 months for Count 1; 120 months for each of Counts 7, 9, 11, 13, 20, and 21; and life imprisonment for each of Counts 3, 6, 8, 10, 12, 14, and 18, all terms to be served concurrently. Judgment was entered on December 8, 2010.

Through appointed appellate counsel, Christopher D. Donovan, Stewart filed a direct appeal with the Seventh Circuit on December 9, 2010 (DE #346, 374). On appeal, Cephus raised the following arguments: (1) The Government's "incessant leading" of its witnesses amounted to credibility vouching, violating Defendant's rights to confrontation and due process; (2) this Court improperly excluded evidence of a victim's prior sexual behavior under Federal Rule of Evidence 412; (3) Defendant was unfairly prejudiced by the admission of evidence that co-defendant Justin Cephus had beaten and hung to death a dog; (4) this Court erred by allowing a superseding indictment that was duplicitous as to every count; (5) Defendant's life sentence without parole violates the Eighth Amendment prohibition against cruel and unusual punishment, and finally (6) this case should be remanded for resentencing due to ambiguity in whether Defendant's separate sentences of incarceration should run consecutive or concurrent. *See United States v. Cephus*, 684 F.3d 703 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 588, 133 S. Ct. 807 (2012). The Seventh Circuit rejected all of Stewart's arguments except the last claim regarding his

sentence. *Id.*[1]

In response to Stewart's arguments that the prosecution asked too many leading questions, the Seventh Circuit found some of those questions were leading and some were not, but regardless, "the leading questions in this case could not have affected the verdict of a reasonable jury, given the overwhelming evidence of the defendants' guilt." (*Id.* at 708.) Regarding the Rule 412 evidence Defendant sought to offer that the victim engaged in other sexual behavior, the Court found that "testimony sought to be elicited by the cross-examination would have been irrelevant." *Id.* Likewise, admission of evidence that Stewart's co-defendant, Justin Cephus, beat and hung a dog was affirmed because it was "relevant to show a method by which Cephus coerced his recruits into obeying his illegal commands and was not unduly prejudicial in light of the extensive evidence that Cephus beat women who worked for him." (*Id.* at 709.) Regarding the allegedly "duplicitous" indictment, the Seventh Circuit found defendants waived the issue for not having brought it up in district court and "[a]nyway none of the counts was likely to be thought duplicitous by the jurors." (*Id.* at 706.)

---

[1] Following investigation into the matter, the Court concluded that the written sentence stating Stewart's sentences are "to be served concurrently" was correct, and the Court mis-spoke during the sentencing hearing when it orally pronounced Defendant's sentences were "all to be served consecutively to each other." The Court resolved this in its September 5, 2012 (DE #433) order, finding the written judgment stating the sentences are to be served concurrently is correct, and remains in effect.

Finally, Stewart's contention that his life sentence violated the cruel and unusual punishment clause of the Eighth Amendment was rejected. (*Id.* at 709.) The United States Supreme Court denied Stewart's petition for writ of certiorari. *See Stewart v. United States*, 133 S. Ct. 807 (2012).

Stewart filed the instant motion to vacate his sentence under section 2255 on December 9, 2013 (DE #499). He received an extension of time to file his memorandum and permission to file an oversized brief, and filed a 41-page brief on April 9, 2014 (DE #543-1). The Government filed a response on June 30, 2014 (DE #566). Stewart then filed a reply on September 3, 2014 (DE #578). As such, this motion is fully briefed, and ripe for adjudication.


DISCUSSION

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus petition pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.; Belford v. United States*,

975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing Petitioner's motion, the Court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting

*Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). In other words:

> The mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Id.* Here, the Court assessed Stewart's claims with these guidelines in mind.


Motion for Leave to File IFP

From his motion, it appears that Stewart is indigent (DE #504). However, there is no filing fee or service requirement for a § 2255 petition. Here, it seems that Stewart's request for ifp status is intertwined with his previous requests for documents and information in the record. Stewart's counsel informed the Court that he sent Stewart copies of transcripts and records (DE ##429, 430) and

7

Stewart sought additional documents including grand jury transcripts which this Court denied (DE ##453, 514). As such, the instant motion to proceed in forma pauperis (DE #504) is **DENIED**.


Section 2255 Petition

Stewart contends that his trial attorney provided constitutionally ineffective assistance of counsel. Claims of ineffective assistance of counsel are governed by the 2-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the Defendant must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001). The second *Strickland* prong requires the Defendant to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Regarding the deficient-performance prong, great deference is given to counsel's performance and the defendant has a heavy burden to overcome the strong presumption of effective performance.

*Strickland*, 466 U.S. at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (defendant "has a difficult burden of proof as he must overcome the strong presumption that his attorney's performance was effective."). Defendant must establish specific acts or omissions that fell below professional norms. *Strickland*, 466 U.S. at 690. If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id.* at 697.

The Seventh Circuit has held that, "[o]nly those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." *Rodriguez v. United States*, 286 F.3d 972, 983 (7th Cir. 2002) (quoting *Kimmelman v. Morrison*, 47 U.S. 365, 382 (1986)). Additionally, trial counsel "is entitled to a 'strong presumption' that his performance fell 'within the range of reasonable professional assistance' and will not be judged with the benefit of hindsight.'" *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 689). "Courts are admonished not to become 'Monday morning quaterback[s]' in evaluating counsel's performance." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (quoting *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990)).


Entrapment Defense

First, Stewart argues his counsel was ineffective because he

9

failed to present an entrapment defense. (DE #543-1, pp. 1-8.) To prove entrapment, a defendant must show both an improper government inducement and a lack of predisposition to commit the crime. *See Mathews v. United States*, 485 U.S. 58, 63 (1988); *United States v. Bek*, 493 F.3d 790, 800 (7th Cir. 2007). The inducement must be "extraordinary." *United States v. Haddad*, 462 F.3d 783, 790 (7th Cir. 2006). When a defendant takes a "simple, ordinary opportunity to commit a crime," he cannot make an entrapment defense. *Id.* The Seventh Circuit recently analyzed this doctrine finding:

> We hold that inducement means more than mere government solicitation of the crime; the fact that government agents initiated contact with the defendant, suggested the crime, or furnished the ordinary opportunity to commit it is insufficient to show inducement. Instead, inducement means government solicitation of the crime *plus* some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts. The "other conduct" may be repeated attempts at persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward beyond that inherent in the customary execution of the crime, pleas based on need, sympathy, or friendship, or any other conduct by government agents that creates a risk that a person who otherwise would not commit the crime if left alone will do so in response to the government's efforts.

*United States v. Mayfield*, 771 F.3d 417, 434-35 (7th Cir. 2014). Regarding predisposition, "a defendant is predisposed to commit the charged crime if he was ready and willing to do so and likely would have committed it without the government's intervention, or actively wanted to but hadn't yet found the means." *Id.* at 438.

10

In this case, there is no evidence to support an entrapment defense. There was no extraordinary offer, or "other conduct" as required by *Mayfield*. The law enforcement agents called the escort service, ordered two girls for "full service" at a quoted price of $350 per girl, and when the girls arrived, they agreed to perform oral and genital sex in exchange for $700 total. (Vol. II, Tr. Transcript, DE #294, pp. 347-53, 444-59.) Stewart's argument about the women potentially receiving tips is convoluted and irrelevant. (DE #578, pp. 1-4.) There was testimony at trial that typically, after the money was collected, the women would tell the John their performance was based on tips, to get them to pay more money. (DE #297, pp. 869, 877-78.) However, no evidence was put forth at trial (and Stewart has not produced any) that there was ever a discussion of any possible tip involved during the sting operation at issue. Even assuming, *arguendo*, a tip was possible, that does not rise to the level of an extraordinary offer. Finally, there was trial testimony that the girls who went to the hotel that day (C.V., L.E. and B.G.) had previously participated in prostitution acts as a part of Defendants' business. (Vol. IV, Tr. Transcript, DE #297, pp. 848-924.)

Stewart seems to argue that the Government would have to prove that he personally was predisposed to commit prostitution offenses. (DE #543-1, p. 9.) However, he has the burden of showing both an improper government inducement and a lack of predisposition to

11

commit the crime. *See Mathews*, 485 U.S. at 63; *Bek*, 493 F.3d at 800. The evidence at trial showed Stewart was a willing participant in the crimes with which he was charged. Thus, any entrapment defense would have failed, and his trial counsel was not ineffective for failing to assert an entrapment defense. Similarly, it was not ineffective assistance to fail to suppress evidence Stewart alleges was "tainted by entrapment." (DE #543-1, p. 15.)

Finally, along the same vein, Stewart argues his counsel should have raised a defense based upon alleged Government misconduct. (DE #541-3, p. 17; Reply, DE #578, p.7) (citing *United States v. Russell*, 411 U.S. 423 (1973).) However, the Seventh Circuit has explicitly denied the existence of such a defense based upon the *Russell* dicta. *See, e.g., United States v. Westmoreland*, 712 F.3d 1066, 1071-72 (7th Cir. 2013); *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011) ("[o]utrageous government conduct is not a defense in this circuit."). Even if it were, as pointed out by the Seventh Circuit in *Stallworth*, "there is nothing inherently outrageous about conducting a sting operation." *Stallworth*, 656 F.3d at 730 (citing *United States v. Murphy*, 768 F.2d 1518, 1528-29 (7th Cir. 1985)).

Severance

Next, Stewart argues his trial counsel was ineffective for not moving for a severance of trials. Specifically, he claims the "vast

12

majority of the evidence would be focused on Domestic relations between purported victims and co-defendants and other conduct not related to Stewart, and a separate trial would have resulted in an acquittal." (DE #543-1, p. 13.)

The Seventh Circuit has stated there is a "strong public interest" in having persons "jointly indicted tried together." *United States v. Neely*, 980 F.2d 1074, 1090 (7th Cir. 1992) (quoting *United States v. Percival*, 756 F.2d 600, 610 (7th Cir. 1985)). That is especially true in cases where multiple defendants are charged with engaging in a common enterprise. *See United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987) ("[t]here is a strong interest in joint trials for those who engaged in a common enterprise."). Joint trials are economical for the courts and prosecutors, reduce the stress on witnesses, and "give[] the jury the best perspective on all of the evidence and therefore increase[] the likelihood of a correct outcome." *Id.* Thus, Stewart has not shown that if he made this motion, it likely would have been granted and would have changed the outcome of the trial. *See, e.g., United States v. Jackson*, 33 F.3d 866, 875-76 (7th Cir. 1994) (denying claim of ineffective assistance of counsel where counsel failed to make a severance motion, reasoning it could have been a tactical decision, and that in any event, "we think it highly unlikely that a motion for severance would have been granted."). Moreover, as in *Jackson*, the Court notes that this Court did admonish the jury that

it was obligated to separately consider each defendant. (DE #214, p. 20.) Thus, the Court cannot say that failure to seek a severance resulted in a different result of the proceedings.

Alleged Failure to Investigate

Stewart contends his trial counsel failed to adequately investigate the facts of the case. (DE #543-1, pp. 15, 22; Reply Br., DE #578, pp. 5-6.) With this assertion, Stewart bears the burden of making a "comprehensive showing as to what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (quoting *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003)). Stewart has not done so, and has failed to provide the Court with any information that, had it been presented at trial, would likely have changed the outcome of the proceedings. He argues his attorney should have pulled certain documents from the files like Stewart's lease, his social security/disability checks, bankruptcy documents and insurance coverage, but there is nothing implicit in the titles of these documents to show the Court what more investigation would have uncovered, and how it could have affected the outcome of the trial. Moreover, there is nothing in the record at all to support Stewart's bald assertion that further investigation would have shown "that Stewart's conviction rests on perjured testimony of Law enforcement entrapping escort girls into illicit acts, and inducing the girls

14

by force and promise to implicate Stewart." (DE #578, p. 6.)

Grand Jury Testimony

Stewart has several arguments relating to the grand jury, which he believes heard perjurious testimony and other inappropriate evidence. (DE #543-1, pp. 16, 18, 27-28.) Stewart has filed a previous request for the grand jury transcripts, which this Court denied (DE #453). In the order, this Court recognized the typical secrecy of the grand jury proceedings, and recognized the need for a "compelling necessity" or "particularized need" to obtain such materials. *Matter of Grand Jury Proceedings, Special Sept.*, 1986, 942 F.2d 1195, 1198 (7th Cir. 1991). Moreover, as this Court noted in the previous order, Stewart's conviction at trial moots any attack he now may be trying to make on the sufficiency of the evidence presented to the grand jury. *See United States v. Rosario*, 234 F.3d 347, 352 (7th Cir. 2000) (noting any such error in the presentation of evidence before the grand jury would be harmless given the jury conviction at trial which indicates a proper grand jury proceeding would have still yielded an indictment).

Not Testifying at Trial

Stewart also criticizes trial counsel for not putting him on the stand to testify at trial. (DE #543-1, pp. 19, 21, *see also* DE #559, Ex. 3 (Aff. Of Defendant)). Stewart contends Mr. Psimos

15

"refused to allow me to testify." (DE #559-3, p.1.) This assertion
is directly contradicted by Stewart's own sworn testimony at the
hearing which this Court conducted outside the presence of the jury
during trial.

This Court asked Stewart if he had talked to his attorney
regarding the right to testify, whether the attorney had explained
he had a right to testify if he wished but no one could force him
to testify, that if he did testify he would be subject to cross-
examination, and this is a "one-time choice; in other words, you
can't wait for the verdict to come back and say, Now I want to
testify. You have to make your decision right now." (DE #304, pp.
2229-2230.) Stewart answered affirmatively to all these questions.
*Id.* Then, this Court specifically asked Stewart, "[i]s it your
desire not to testify in this case?" and he answered, "Yes, Judge."
(*Id.*, p. 2230.) When asked if he was doing this knowingly and
voluntarily, he replied, "[y]es, Your Honor" and stated that no one
forced him to not testify. (*Id.*, pp. 2230-31.)

Stewart was properly advised of his right to testify and the
Court found that he was making a knowing and voluntary decision not
to testify. Stewart's claim that his attorney improperly convinced
him or forced him to not testify is thus contradicted by the record.
He is bound by that testimony. *See United States v. Ellison*, 835
F.2d 687, 693 (7th Cir. 1987) ("Rational conduct requires that
voluntary responses made by a defendant under oath before an
examining judge be binding. Such a requirement is consistent with

16

reason and common sense.").

Furthermore, Stewart did list proposed testimony for the Court (DE #559, Ex. 3), but much of that proposed testimony was directly contradicted by the overwhelming evidence presented at trial, making it likely to be perceived as perjurious. *See United States v. Curtis*, 742 F.2d 1070, 1076 (7th Cir. 1984) (finding although criminal defendant has a constitutional right to testify truthfully on his own behalf, he "has no constitutional right to testify perjuriously in his own behalf"). As such, the proposed testimony does not indicate it could have lead to an acquittal.

Batson Challenge

Stewart also argues "that statistical disparities resulted in Jury strikes, causing an unequal Jury of his peers, in violation of *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986)." (DE #543-1, p. 20.) Stewart contends that at trial, there was only one African American on the jury and one African American alternate juror.[2]

During jury selection in this case, both the Government[3] and defense counsel raised *Batson* challenges. (DE #306, Vol. I, Tr. Transcript, pp. 89-91, 138-140). Counsel for co-defendant, Jackson-Bey (who was later severed from trial due to contraction of MERSA),

_____

[2] The Court does not maintain records that can verify or refute this statement. The Government does not contest this point, and the Court's independent recollection is the same.

[3] The Government first raised a *Batson* challenge, arguing the Defendants were improperly challenging female jurors based upon their sex. (DE #306, p. 85.) The Court denied that challenge. (*Id.*, p. 87.)

raised a *Batson* challenge following the Government's peremptory strike of an African American female. (*Id.* at 138.)[4]

Under *Batson*, the prosecution may not use a peremptory challenge to strike a potential juror on the basis of his or her race. *Batson*, 476 U.S. at 89. When claiming a *Batson* violation, the defendant must first make a prima facie case that a challenge was used to exclude a juror based on race. *United States v. Brown*, 289 F.3d 989, 993 (7th Cir. 2002). If the prosecution comes forward with a race-neutral explanation, the trial court will allow the challenge unless the defendant establishes the explanation is pretextual. *Id.* At trial, AUSA Benson explained the African American juror he struck worked for a lawyer whom he personally prosecuted and convicted, and her brother was convicted of rape (a crime related to the issues in this case). (DE #306, pp. 138-140). Based upon the Government's race-neutral explanation for the peremptory strike, this Court found no *Batson* violation. (*Id.*, p. 140.)

Despite quoting *Batson* in his section 2255 motion, Stewart has failed to point to any specific jurors he believes were challenged based upon racial grounds. In his reply memorandum, he seems to

---

[4] The Court notes that the Government makes the argument that Stewart is albino, and his appearance could have been perceived as Caucasian by the jury. (DE #566, p. 13 n. 4.) In his reply, Stewart states he "is albino, but any person can see he is a black man with a blond Afro." and the jury was told his two black co-defendants were his cousins. (DE #578, p. 8.) Regardless of any possible perceptions by the jury, because Stewart states he is African American, this Court will analyze his *Batson* challenge accordingly.

generally challenge the "unequal ethnical" jury composition, quoting *Campbell v. Louisiana*, 523 U.S. 392 (1998). (Reply Br., DE #578, p. 8.) Stewart also contends, without providing more support, that "[t]he racial ethnicity of the State of Indiana, Hammond Division area, is at or above nuteral [sic.] in the black and white races, thus, out of Stewart's jury pool, the systematic selection process would question black as minority for his trial." (Reply Br., DE #578, p. 8.)

In essence, Stewart is making a fair cross-section argument. However, he has failed to establish a prima facie case that his Sixth Amendment right to a venire drawn from a fair cross-section of the community was violated. As the Seventh Circuit has explained:

> [S]uch a showing requires the defendant to demonstrate that the group allegedly excluded is a distinctive part of the community; that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*United States v. Cooke*, 110 F.3d 1288, 1301 (7th Cir. 1997) (quoting *United States v. Ashley*, 54 F.3d 311, 313 (7th Cir. 1995)). Stewart has failed to provide the Court with any facts or numbers whatsoever. He has not established the racial make-up of the counties providing jurors for this district or the racial make-up of the jury venire. Additionally, he has not demonstrated that any purported under-representation of African Americans resulted from any type of systematic exclusion. As such, he has not met his

burden of establishing a prima facie showing of a Sixth Amendment violation based upon the composition of his jury venire. *Cooke*, 110 F.3d at 1301. Moreover, the Seventh Circuit has upheld the use of voter rolls to select a venire, which was the same process used in this case. *United States v. Smith*, 223 F.3d 554, 569 (7th Cir. 2000) (citing *Cooke*, 110 F.3d at 1302).

## Insufficiency of Evidence

Stewart claims his appellate counsel was insufficient for not supplementing the insufficient evidence claim on appeal to include himself. (Section 2255 Pet., pp. 35-37.) On appeal, co-defendant Stanton Cephus alone argued the evidence of his guilt was insufficient to convict him; however, the Seventh Circuit rejected that argument, finding he did participate in the conspiracy and "[t]he *Pinkerton* doctrine therefore made him liable for criminal acts committed by the other conspirators within that scope." *Cephus*, 684 F.3d at 707 (citing *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946); *United States v. Colon*, 549 F.3d 565, 572 (7th Cir. 2008)). The same result would have been reached if Stewart's counsel had raised such a claim - there was ample evidence produced at trial that Defendant Stewart recruited girls, drove girls on calls, collected the money earned, acted as a pimp to and hit at least one girl, told other girls they could not leave the house while working for the business, and the Government referred to him as "Justin Cephus's right-hand man." (Sent. Tr., DE #370, pp. 21, 53.) Based upon the overwhelming weight of evidence produced at

trial, Stewart's appellate counsel was not ineffective for failing to present an insufficiency of evidence argument, and even if presented, any such argument would have failed.

Request For An Evidentiary Hearing

Stewart requests an evidentiary hearing, stating "an Evidentiary hearing is feasible and thus, requested." (2255 Pet., DE #543-1, p. 40.) An evidentiary hearing need not be held for every section 2255 motion. *Liss v. United States*, 915 F.2d 287, 290 (7th Cir. 1990). "No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (citation omitted).

Stewart has failed to offer the Court any objective facts outside the trial record that would warrant an evidentiary hearing. Moreover, the Court has concluded that the record and history of this case demonstrate that Stewart is not entitled to relief. Therefore, an evidentiary hearing is not warranted. *See Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir. 2004) (holding district court did not abuse its discretion in denying evidentiary hearing where defendant was not entitled to 2255 relief, and given lack of additional evidence from defendant).

21

Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (U.S. 2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Stewart has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.

CONCLUSION

For the aforementioned reasons, the motion for leave to proceed in forma pauperis (DE #504) is **DENIED** and the section 2255 motion (DE #499) is also **DENIED**. Stewart's request for an evidentiary

22

hearing (DE #543-1, p. 40), is also **DENIED**.  The Clerk is **ORDERED**
to **DISMISS** this civil action **WITH PREJUDICE**.  Additionally, the
Court **DECLINES** to issue a certificate of appealability.  The Clerk
is **FURTHER ORDERED** to distribute a copy of this order to Petitioner
(Inmate Reg. No. 10105-27), Tucson USP, US Penitentiary, Inmate
Mail/Parcels P.O. Box 24550, Tucson, Arizona 85734, or to such other
more current address that may be on file for the Petitioner.



**DATED: January 7, 2015**                    **/s/ RUDY LOZANO, Judge**
                                              **United States District Court**