UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.: 2:09-CR-43-2-TLS |
| JOVAN DEMONT STEWART | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Jovan Demont Stewart's Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i); in Light of Changes in Law [ECF No. 822], filed on October 28, 2024. For the reasons below, the Court denies the Defendant's request.

**BACKGROUND**

The Superseding Indictment charged the Defendant with conspiring to use and using force, fraud, and coercion to cause several women—including minors as young as sixteen—to engage in prostitution. *See* ECF No. 35. The Government cites the Presentence Report and the Addendums thereto, filed under seal as Exhibit 1 in support of its response brief, for the following testimony and evidence presented at trial. ECF No. 834.

The conspirators, led by the Defendant's "cousin" Justin Cephus and assisted by the Defendant, advertised an "escort" business throughout the Chicago-land area. Ex. 1, ¶¶ 19–20, ECF No. 834. The conspirators recruited, enticed, and obtained approximately 20 females to work for them over the duration of the conspiracy. They accomplished this by stopping the girls and women in public places or meeting them through friends, relatives, or acquaintances; flirting with them; pretending to be interested in dating them; paying for their manicures, pedicures,

clothes, shoes, jewelry, or other personal items; and/or providing them illicit and mood-altering drugs, including cocaine, ecstasy, marijuana, Xanax, and alcohol. *Id.* ¶ 21

The conspirators used the following means of force, fraud, and coercion to cause the victims to engage in prostitution:

-physical force including but not limited to hitting, punching, slapping, kicking, beating, cutting, choking, whipping and/or sexual assault;

-false claims including but not limited to assertions that they would be working in "promotions," "modeling," "house cleaning," "private dancing," or "massage therapy"; they would get to meet and possibly appear in music videos with a popular music artist related to Defendant Patterson; and/or they could keep half, most, or all of the "easy money" they would make working for the business;

-coercive tactics including but not limited to telling the girls they owed money to the conspirators for the clothes/personal items/drugs/alcohol they had already been provided; threatening to cause and/or causing serious harm or physical restraint to another girl in front of, or within earshot of, a victim; restraining a victim or restricting her to a certain area and assigning someone to constantly monitor her whereabouts; and/or providing detailed descriptions of physical force or restraint used in the past against other victims who did not comply.

*Id.* ¶ 22.

Among other goals, *id.* ¶¶ 25–30, the conspirators worked together to keep all, most, or at least half of the money earned by each victim, *id.* ¶ 28. The proceeds were also used to buy more beauty-related items or services and provocative clothes to promote the business or to purchase additional illicit and mood-altering substances to numb the victims' senses and control them. *Id.* ¶¶ 29, 30.

The Defendant recruited several victims into the conspiracy, including L.E., B.G., and women known only as Candy and Stephanie. *Id.* ¶ 31. The Defendant utilized physical force against L.E. and B.G.; he also transported victims across state lines for purposes of prostitution calls. *Id.* at 32. A.B.2, a seventeen-year-old girl, was trafficked by the conspiracy and forced to

2

go on prostitution calls, and the Defendant transported her during these calls. *Id.* ¶ 34. A.B.2 advised that the Defendant would "beat his girls." *Id.* ¶ 35.

Another victim advised that a victim she knew as Pug was beaten by Defendant and that Defendant refused to let Pug leave to see her family. *Id.* ¶ 42. Another victim, A.W. was primarily trafficked by a co-defendant, but was periodically left under Defendant's control who would refuse to allow her to leave the house and transported her to other locations for purposes of prostitution. *Id.* ¶¶ 45, 46. B.G. was victim of the conspiracy who started working just after her eighteenth birthday. *Id.* ¶ 50. On her first "call," the Defendant informed her that she would either have sex with the "john" or else she would be left at the "john's" house or would be beaten by the Defendant. *Id.* B.G. recounted that she had been punched in the face twice by the Defendant. *Id.* This is a sample of the behavior listed in the PSR that continues for several paragraphs explaining the details of the violent, controlling, and manipulative exploitation of young women for the Defendant's own profit over an extended period. *id.* ¶¶ 50–86.

On November 20, 2009, after a ten-day trial, a jury returned a guilty verdict on Counts 1, 3, 6, 7–14, 18, 20, and 21 of the Superseding Indictment. *See* ECF Nos. 203, 205. On December 7, 2010, the Court sentenced the Defendant to 60 months imprisonment on Count 1; 120 months imprisonment on each of Counts 7, 9, 11, 13, 20, and 21; and life imprisonment on each of Counts 3, 6, 8, 10, 12, 14, and 18, all to run concurrently. *See* ECF No. 342. Further, the Court sentenced the Defendant to a five-year term of supervised release on Counts 3, 6–14, 18, 20, and 21, and a three-year term of supervised release on Count 1, all to run concurrently. *See id.*

On February 17, 2021, the Defendant filed his first pro se motion for compassionate release because of the COVID-19 pandemic and his obesity/kidney issues as well as to care for his sister. ECF No. 737. The Court denied the motion on July 23, 2021, finding that neither

reason was extraordinary and compelling. ECF No. 755. The Court also held that release would not be consistent with the 3553(a) factors. *Id.*

On May 15, 2024, the Defendant applied to the Warden of his facility with a new request for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 822, Ex. 1, pp. 97–99. He requested compassionate release based on (1) his sentence being overly harsh and unusually long and, if sentenced today, his sentence could possibly be lower; (2) his rehabilitation; (3) the harsh living conditions and dangers due to COVID-19; (4) inadequate medical care; (5) sentencing disparity; and (6) and his age at the time of his crime in correlation with his mental health issues showing he was not operating on an adult level.

On October 28, 2024, the Defendant filed the instant motion for compassionate release based on (1) his current sentence being longer than necessary to achieve the goals of sentencing under § 3553(a), (2) his mental health and age at the time of the offense, (3) a sentencing disparity with a codefendant, (4) his health conditions/medical treatment, (5) his rehabilitation efforts while incarcerated, and (6) no longer being a threat to public safety. ECF No. 822.[1] On February 10, 2025, the Government filed a response to the motion, ECF No. 832, the Defendant's pretrial sentence report and objections under seal, ECF No. 834, and a Motion to Seal, ECF No. 833. On May 20, 2025, the Defendant filed a Motion for Status Report. ECF No. 836.

---

[1] The requirement that a defendant exhaust his administrative remedies before filing a motion for compassionate release "is an affirmative defense, not a jurisdictional prerequisite." *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021) (citation omitted). While noting that the Defendant is limited on this motion to the bases raised in his letter to the warden, the government does not argue that the Defendant has failed to exhaust his administrative remedies.

## ANALYSIS

Following the imposition of a sentence, a court may not modify the term of imprisonment absent specific circumstances enumerated in 18 U.S.C. § 3582(c). As relevant here,

> the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights . . . , may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   (i) extraordinary and compelling reasons warrant such a reduction;
>
>   . . .
>
>   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). Thus, "[a] motion for compassionate release involves a two-step inquiry: one, did the prisoner present an extraordinary and compelling reason for release, and two, is release appropriate under § 3553(a)." *United States v. Kurzynowski*, 17 F.4th 756, 759 (7th Cir. 2021) (citing *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021)). For the reasons below, the Court concludes that there are no extraordinary and compelling reasons warranting the Defendant's release and, even if there were, the Defendant's release is not consistent with the § 3553(a) factors.

**A.   Extraordinary and Compelling Reasons**

It is the Defendant's burden to establish the extraordinary and compelling reasons warranting a sentence reduction. *See United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). While the statute does not define "extraordinary and compelling reasons," Congress tasked the United States Sentencing Commission with explaining these terms by promulgating general policy statements on the sentencing modification provisions in 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Under that authority, the Sentencing Commission issued a Policy Statement on

5

§ 3582(c)(1)(A), amended on November 1, 2023, which sets out six circumstances that may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* U.S.S.G. § 1B1.13. These six circumstances are:

- certain medical circumstances of the defendant, *id*. § 1B1.13(b)(1);
- the defendant's age, *id*. § 1B1.13(b)(2);
- the defendant's family circumstances, *id*. § 1B1.13(b)(3);
- the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer, *id*. § 1B1.13(b)(4);
- any other circumstances or combination of circumstances similar in gravity to the circumstances listed above, *id*. § 1B1.13(b)(5); or
- the defendant received an unusually long sentence, *id*. § 1B1.13(b)(6).

The Policy Statement also requires the court to determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* § 1B1.13(a)(2). The Court considers each of the Defendants' asserted bases for compassionate release in turn.

1. *The Defendant's Age and Mental Health at the Time of the Offense and the Length of his Sentence*

A large portion of the Defendant's brief challenges the length of his life sentences based on the assertion that his mental health and cognitive functioning meant he was functionally a child at the time of the crime such that a life sentence was not appropriate. The Defendant has not shown his age or length of sentence to be an extraordinary and compelling basis to reduce his sentence.

First, the Court was aware of and considered the Defendant's age and mental condition at the time of sentencing. As noted by the Government, the PSR, the Defendant's sentencing memorandum, and at least one letter from the Defendant's brother addressed these issues. *See* ECF Nos. 335, 834. For example, the Defendant's sentencing memorandum provided:

> Mr. Stewart is of African-American race (PSR, ¶ 2) and has hazel eyes and blonde hair (PSR, ¶ 217). He has the traits of an Albino since he also has freckles

6

> on his face and arms. He has an astigmatism problem in both eyes that severely limits his ability to see.
>
> He was diagnosed with a learning disability at birth (PSR, ¶ 221) and he is receiving social security benefits for not only that condition, but also for the astigmatism problem (PSR, ¶ 228). His life growing up with those physical attributes impacted his life. He was constantly picked on and had to always defend himself. He began to hang around with Justin Cephus as a young teen whose family took him in. He looked up to Justin Cephus who protected him from others who constantly picked on him due to his appearance. They were so close that Mr. Stewart referred to him as his cousin.

PSR 4, ECF No. 335. Letters received from the Defendant's brother referenced the Defendant's limited capacities, such as being in Special Olympics and being "handicapped." ECF No. 336-1.

Second, the Defendant was not a juvenile at the time of the offense nor was he subject to a mandatory life sentence. *Miller v. Alabama*, cited by the Defendant, held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for *juvenile* offenders." 567 U.S. 460, 479 (2012) (emphasis added). The Supreme Court reasoned, "Such mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.* at 476. However, the Defendant was not a juvenile as he was approximately 27 years old at the time of the earliest offense conduct in 2006 given that he was born in 1979. *See* PSR 3, 5, 34, ECF No. 834.[2] Moreover, the Defendant received a discretionary rather than a mandatory life sentence. *See* 18 U.S.C. § 2423(a) (Count III—minimum 10 years, maximum life); 18 U.S.C. §§ 1591(a)(1), (b)(1) (Counts VIII, X, XII, XIV, XVIII—minimum 15 years, maximum life); 18 U.S.C. § 2421 (Counts VII, IX, XI, XIII, XX, and XXI—maximum 10 years); 18 U.S.C.

---

[2] At one place in his motion, the Defendant states that he was 19 years old at the time of the offense, Mot. 17, ECF No. 822, but later in the motion he states he was 27 at the time of the instant offense, *id.* at 50. In addition, even if the Defendant had been under the age of 21 at the time of the offense, the Defendant's reference to § 608(c) of the First Step Act would not have provided him any relief. That provision defines "youth" solely for purposes of a pilot prison mentorship program. *See* First Step Act of 2018, Pub. L. No. 115-391, § 608(c), 132 Stat 5194, 5220 (Dec. 21, 2018); *United States v. Melendez*, 534 F. Supp. 3d 172, 175 (D. Minn. 2021).

7

§§ 1591(a)(1), (b)(2) (Count VI—minimum 10 years, maximum life); U.S.S.G. Chapter 5, Part A (guideline range for imprisonment is life imprisonment based on the total offense level of 43 and a criminal history category of II).

On direct appeal, the Defendant raised a similar argument that the life sentence without parole was cruel and unusual punishment under the Eighth Amendment unless the crime is murder, which was rejected by the Seventh Circuit Court of Appeals:

> The defendants challenge their sentences. Cephus and Stewart contend that life sentences without parole violate the cruel and unusual punishments clause of the Eighth Amendment unless the crime for which the sentences are imposed is murder. Yet *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), upheld a life sentence without possibility of parole for possession of a modest quantity of cocaine. Subsequently the Court held that the Eighth Amendment forbids imposing a life sentence without parole on a juvenile for a crime other than murder, *Graham v. Florida*, — U.S. —, 130 S.Ct. 2011, 2030, 176 L.Ed.2d 825 (2010), and, more recently, that mandatory life sentences for juvenile murderers are also prohibited. *Miller v. Alabama*, — U.S. —, 132 S.Ct. 2455, 183 L.Ed.2d 407, 2012 WL 2368659 (S.Ct. June 25, 2012). Neither opinion overrules *Harmelin;* both, indeed, distinguish it explicitly. Our defendants were not juveniles and their crimes were more serious than the crime in *Harmelin.* Even if we thought *Harmelin* inconsistent with *Graham* and *Miller* and likely to be overruled, the Supreme Court has, as we noted recently in *Grayson v. Schuler*, 666 F.3d 450, 453 (7th Cir. 2012), told the lower courts in no uncertain terms to leave the overruling of its precedents to it.

*United States v. Cephus*, 684 F.3d 703, 709 (7th Cir. 2012).

As argued by the Government, the Court weighed all the factors associated with the Defendant and the offense conduct and properly exercised its discretion in issuing the sentence of life imprisonment. The Court explained, "The Court thus determines that the applicable guidelines in this case are total offense level 43, criminal history category 2, calling for life imprisonment." Sentencing Trans. 31, ECF No. 370. "Mr. Stewart, I considered what punishment to give you and no more than what is necessary. I've tried to find good reasons to depart. I can't find any, Mr. Stewart." *Id.* at 67. The Court also emphasized the Defendant's role

as a manager of the enterprise and his conduct in obstructing justice in the investigation. *Id.* 20–21, 26–27.

The Defendant has not shown that his sentence was unusually long or that his age at the time of the offenses are extraordinary and compelling reasons to reduce his sentence.

*2.    The Defendant's Rehabilitation*

The Defendant argues that, despite facing a sentence of life in prison, he has worked to better and rehabilitate himself. The Court considered a similar argument in the Defendant's first motion for compassionate release in the context of the 3553(a) factors and found that

> nothing before the Court demonstrates that his rehabilitation is complete. The only evidence the Defendant has provided of his rehabilitation are certificates indicating that he has earned his G.E.D., completed the drug education program, and completed the following courses: "inside out dad, typing, abdominals course, aerobics class, cosmetology, drivers education, G.E.D. math, aerobics II, foodtruck, [and] financial peace." Although the Court commends the Defendant for engaging in the opportunities offered by the BOP, the Defendant's recent progress does not overcome the seriousness of the Defendant's conviction.

July 23, 2021 Op. & Order 9, ECF No. 755 (citing Def.'s Mot. 8, 14–25, ECF No. 737). Since then, the Defendant completed the Sports Injury ACE Class and has participated in the BOP Psychology Services Challenge Program. Although the Defendants' rehabilitation efforts continue to be commendable, rehabilitation alone is not an extraordinary and compelling reason that permits a sentence reduction. 28 U.S.C. § 994(t). And, as set forth in this Opinion and Order, the Court finds that there are not any other extraordinary and compelling reasons for a sentence reduction. *See United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) (quoting *United States v. Hunter*, 12 F.4th 555, 563 (6th Cir. 2021)); *see also* U.S. Sentencing Guidelines § 1B1.13(d) ("[R]ehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.").

*3.     Sentencing Disparity with Co-Defendant*

Next, the Defendant argues that the disparity between his life sentence and co-defendant Stanton Landry Cephus' sentence of 324 months is an extraordinary and compelling reason to reduce his sentence. But the Defendant offers no analysis for why the different sentences were not justified. And the Court finds that the difference in sentencing was supported by the evidence and is not a basis for reduction of the Defendant's sentence.

The Defendant's total offense level was 43, including enhancements for being a manager/leader and for obstruction of justice. His criminal history category was II. As set forth in the background above, the Defendant was physically abusive to the victims, drove the girls to calls, collected money, and acted as a pimp. The advisory guideline range was a sentence of life imprisonment, which was the sentence imposed. In contrast, Stanton Cephus was not a manager or a leader, and he received a two-point reduction for his mitigating role in the offense. ECF No. 361. He did not live at the house and stayed mostly with his mother; he never trafficked women or physically harmed them by hitting them. *See* Trial Trans. 836:5–10, 948:16–23, ECF No. 297; Trial Trans. 1177:19–22, 1241:11, ECF No. 298. Nevertheless, Stanton Cephus still received the significant sentence of 324 months. ECF No. 361. The difference in the two sentences is warranted and is not an extraordinary and compelling reason to reduce the Defendant's sentence.

*4.     The Defendant's Health Risks Due to COVID-19*

The Defendant asks the Court to consider the COVID-19 pandemic as a basis for compassionate release. He cites a source on the pandemic from 2021 and cases about the harsh condition of the pandemic from 2020. Mot. 34–35, ECF No. 822. For his health risks, he contends he has not been given proper treatment for certain health conditions, generally listing issues with his kidneys, astigmatism, anal problems, and asthma. *Id.* at 31 (citing his medical records at Ex. C, ECF No. 822-1, pp. 72–86). However, he does not specifically identify what

10

treatment he has not received from the BOP. As argued by the Government, the medical records submitted by the Defendant show that he is forty-five years old with no outstanding serious health issues. In 2022, he had surgery for a perianal fistula, and in 2023, he had an unremarkable colonoscopy. Ex. C, ECF No. 822-1, pp. 73–81, 82–86. His psychological records show that his psychological prognosis is "good." ECF No. 822-1, p. 14. The Defendant has not met his burden of showing that his medical conditions constitute an extraordinary and compelling reason to reduce his sentence.

**B.      Consideration of the Section 3553(a) Factors**

Even if the Defendant had shown an extraordinary and compelling reason meriting compassionate release, the Court would nevertheless find that the § 3553(a) factors weigh heavily against release. In assessing the § 3553(a) factors, a court considers:

> the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed.

*United States v. Pena*, No. 2:15-CR-72, 2020 WL 3264113, at *2 (N.D. Ind. June 17, 2020) (citing 18 U.S.C. § 3553(a)). A court considers the § 3553(a) factors only "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The Defendant argues that he is no longer a threat to public safety and that his conviction in this case is a clear deterrent from committing crimes. However, the Court's analysis of these factors is largely unchanged from its last order:

> The first factor, the nature and circumstances of the offense, as well as the second factor, the need to reflect the seriousness of the offense and to provide just punishment for the offense, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from further crimes of the Defendant, clearly demand that the Defendant's motion be denied. The Defendant's offense involved sex trafficking and some of his victims were minors. His conduct was

11

> grotesque and will undoubtedly impact his victims and their families for the remainder of their lives.

July 23, 2021 Op. & Order 8, ECF No. 755. As argued by the Government, the Defendant participated in a several years-long conspiracy to force or cause—violently, fraudulently, and/or through various forms of coercion—numerous young girls and women to have sex with strangers in exchange for money, most of which the conspirators kept for themselves. And the Defendant played a central role in the conspiracy. All of this warranted several life sentences. Accordingly, the § 3553(a) factors do not warrant a reduced term of imprisonment.

## CONCLUSION

Based on the Defendant's specific circumstances and the above-described factors, the Court finds that a reduced term of imprisonment under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) is not warranted. The Court hereby DENIES the Defendant's Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i); in Light of Changes in Law [ECF No. 822]. The request is denied without prejudice and with leave to refile should there be a change in circumstances involving the Defendant.

The Court further DENIES as moot the Defendant's Motion for Status Report [ECF No. 836], GRANTS the United States of American's Motion for Leave to File Document Under Seal [ECF No. 833], and ORDERS that the Government's Exhibit 1 [ECF No. 834] REMAIN UNDER SEAL.

SO ORDERED on June 20, 2025.

    s/ Theresa L. Springmann
    JUDGE THERESA L. SPRINGMANN
    UNITED STATES DISTRICT COURT